DECISION
Plaintiff appeals the real market value of the subject residential property identified as Account R174717 for tax year 2008-09. A telephone trial was held on January 26, 2010. Plaintiff appeared on his own behalf. Larry Beard (Beard), Appraiser, testified on behalf of Plaintiff. Doug Kelsay (Kelsay), Property Appraiser, and Dave Babcock (Babcock), Appraiser, testified on behalf of Defendant.
Plaintiff offered a retrospective appraisal prepared by Larry Beard and land site adjustment information as exhibits. Defendant offered an appraisal report prepared by Doug Kelsay which was numbered Exhibits 1 through 7. All offered exhibits were received without objection.
 I. STATEMENT OF FACTS
The subject property was originally built in 1948 and substantially remodeled, adding over 1,400 square feet of living space, in 2007. (Ptf's Appraisal Report at 5.) The subject property includes 2,512 feet of living space (4 bedrooms and 2.5 bathrooms) and an oversized 2-car garage situated on a 19,199 square foot lot. (Id.)
Using six adjusted property sales (commonly referred to as comparable sales), Beard concluded that as of the January 1, 2008, assessment date the real market value of the subject *Page 2 
property was $320,000. (Id. at 7.) Beard testified that each of the comparable sales "were in close proximity to each other," and similar in age, quality and size. The adjusted comparable sales ranged in value from $312,400 to $335,745. (Id. at 6, 10.) Beard testified that he inspected both the interior and exterior of the subject property and the exterior of each of the comparable sales. He concluded that comparable sales 2 and 3 were most like the subject property because of the total living space and overall construction quality. Kelsay's appraisal report selected three properties as comparable; those three properties were the same as Beard's comparable sales 1, 2, and 3. (Def's Ex 1; Ptf's Appraisal Report at 6.) Kelsay's adjusted comparable sales ranged in value from $426,237 to $473,917, and he computed an indicated value by market approach of $456,800. (Def's Ex 1.)
Beard's and Kelsay's adjustments to comparable sales 1, 2 and 3 were significantly different for site and gross living area, and only Beard made an adjustment to comparable sale 3 for view. Kelsay asked Beard how he determined the view adjustment of $50,000 for comparable sale 3. In response, Beard testified that he determined the amount using "match pair analysis" of comparable properties similarly located. Kelsay disputed the value of the adjustment, referencing Def's Exhibits 4, 5, and 6, and testifying that a view adjustment is not warranted.
Kelsay asked Beard how he determined the site adjustment for each of the comparable sales given the current zoning of the subject property, R5, which allows the land parcel to be subdivided into at least one, if not two, buildable lots. Beard responded that the county is assuming that the lot is "divisible" and ignoring the approval costs, and possible "diminishing" value to the subject property resulting from having "a house behind it." Beard's report stated that the property was zoned R7. (Ptf's Appraisal Report at 5.) Beard's site adjustment amounts *Page 3 
ranged from 64 cents per square foot to 76 cents per square foot. (Id. at 6.) Kelsay testified that the subject property is located on a flat land parcel and that, as of January 1, 2008, had not been divided. He testified that the lot size adjustment he made to each of his three comparable sales was "computer generated" and he did not submit any supporting documentation as an exhibit. Babcock testified that the land parcel is zoned R5 and, if it were vacant, could be divided into 3 lots. The size adjustment was for a "double lot adjustment reduced by 10 percent for the costs associated with approvals absent any on-site development costs." Babcock testified that the subject property currently occupies approximately "11,339 square feet" and he "believes another house with driveway access" could be built on the vacant land.
Kelsay adjusted the gross living area for comparables 2 and 3 because both properties were two story structures. (Def's Ex 1.) Beard made no adjustment to the gross living area because the total gross living area of both properties was comparable to the subject property even though the subject property's gross living area was all on one floor. (Ptf's Appraisal Report at 6.) Beard and Kelsay both made an adjustment for the gross living area of comparable sale 1. (Ptf's Appraisal Report at 6; Def's Ex 1.) Even though each appraiser reported a slight difference in the gross living space of comparable 1, the main difference in their adjustment came from their computation of cost per square foot. Beard used approximately $35 per square foot and Kelsay used approximately $79 per square foot. (Id.) Kelsay testified that his adjustment was "computer generated;" Beard offered no explanation of how he determined the cost per square foot. *Page 4 
 II. ANALYSIS
At issue in this case is the subject property's real market value for tax year 2008-09. Real market value is defined in ORS 308.205(1)[1]
which reads:
 "[RMV] of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year."
There are three methods used to determine real market value: (1) the cost approach, (2) the sales-comparison or comparable sales approach, and (3) the income approach. Allen v. Dept. of Rev., 17 OTR 248, 252 (2003).See also OAR 150-308.205-(A)(2)(a) (stating that all three approaches to valuation of real property must be considered, although all three may not be applicable to the valuation of the subject property). The parties only used the comparable sales approach to value the subject property.
A. Comparable Sales Approach
Both parties valued the subject property using the comparable sales approach. The parties agreed that three properties were comparable to the subject property. The main differences between their estimated real market value can be found in two adjustments: gross living space and site.
A review of the parties' evidence is governed by statute. "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fall upon the partyseeking affirmative relief * * *." ORS 305.427 (emphasis added). Plaintiff must establish his claim "by a preponderance of the evidence, or the more convincing or greater weight of *Page 5 
evidence." Schaefer v. Dept. of Rev., TC No 4530, WL 914208 at *2, (July 12, 2001) (citing Feves v. Dept. of Revenue., 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position." Poddar v. Dept. of Rev., 18 OTR 324, 332 (2005) (quoting Woods v. Dept. of Rev., 16 OTR 56, 59 (2002) (citation omitted)).
For the site adjustment, Beard made a small value adjustment even though the subject property's current zoning permits a subdivision of the lot. Beard submitted no evidence as to how he computed the site adjustment; he merely criticized Defendant's conclusions. "Such negative testimony does not establish an affirmative case." Erickson v.Commission, 1 OTR 626, 629 (1964).
The two parties' adjustments for gross living space were substantially different for comparable sales 1 and 3. Beard made no adjustment for the subject property's 460 square foot unfinished attic. (Ptf's Appraisal Report at 5, 6; Def's Ex 1.) Beard offered no evidence to support the price per square foot of his gross living space adjustments.
Plaintiff's appraiser's lack of evidence in support of his proposed adjustments to the identified comparable sales results in Plaintiff not carrying his burden of proof. Plaintiff's requested real market value is denied.
B. Defendant's Appraisal Report — Indicated Real Market Value
Even though Plaintiff has not carried the burden of proof, the court now considers Defendant's Appraisal Report because Defendant offered a reduction to the real market value found by the Board of Property Tax Appeals. (Def's Ltr, Sept 18, 2009.) Defendant's "indicated value by market approach" is within a range of the three comparable sales' adjusted indicated values. (Def's Ex 1.) The net adjustments to each of the unadjusted sales prices ranged from 31.7 percent to 47.4 percent. (Id.) Such a range denotes a lack of comparability among the *Page 6 
properties. However, if the size adjustment amounts are removed, the net adjustments are within a reasonable range, suggesting that, without the excess land, the subject property's land and improvements and the three sales' land and improvements are comparable. Like Plaintiff, Defendant did not submit any evidence to support the excess land (size) adjustments. Even though the court agrees with Defendant that "the current zoning guidelines for the City of Portland * * * make[] the land considerably more valuable than the adjustments that were made to comparable properties used in [Beard's] report," the question remains whether Defendant's size adjustments are adequately supported by sales data. (Def's Ltr, July 23, 2009.) Defendant did not provide the source data for the values "generated by the computer." To rebut Defendant's land value, Plaintiff submitted 2009 real market values for property located on the same street (SE 115th Avenue) as the subject property. (Ptf's Ltr, Dec 26, 2009.) Unfortunately, those documents are not helpful because they do not segregate land and improvement real market values and the values are 12 months after the applicable assessment date.
If the court does not accept Defendant's indicated real market value, the subject property's real market value would not benefit from Defendant's proposed value reduction. The court will not penalize Plaintiff for Defendant's failure to substantiate its proposed reduction. The court accepts Defendant's proposed 2008-09 real market value ($456,800) for the subject property.
 III. CONCLUSION
After carefully considering the testimony and evidence, the court concludes that Plaintiff fails to carry the burden of proof, failing to adequately value the subject property's land on which another structure in addition to the current improvements could be built and to provide *Page 7 
documentation in support of the comparable sales' adjustment amounts. The court accepts Defendant's determination of the 2008-09 subject property's real market value. Now, therefore,
IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied; and
IT IS FURTHER DECIDED that Defendant's determination of the real market value of the subject property identified as Account R174717 for tax year 2008-09 in the amount of $456,800 is accepted.
Dated this ___ day of March 2010.
If you want to appeal this Decision, file a Complaint in the RegularDivision of the Oregon Tax Court, by mailing to: 1163 State Street,Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 StateStreet, Salem, OR.
 Your Complaint must be submitted within 60 days after the date of theDecision or this Decision becomes final and cannot be changed.
 This Decision was signed by Presiding Magistrate Jill A. Tanner onMarch 29, 2010. The court filed and entered this Decision on March 29,2010.
[1] All references to the Oregon Revised Statutes (ORS) and to the Oregon Administrative Rules (OAR) are to 2007. *Page 1